UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re:

D&G Construction Dean Gonzalez, LLC                    Case No. 21-71463-AST
                                                       Chapter 11

                                        Debtor.
--------------------------------------------------------X

## DECISION AND ORDER DISMISSING CHAPTER 11
## CASE WITH PREJUDICE AND IMPOSING SANCTIONS

On August 16, 2021, Debtor D&G Construction Dean Gonzalez, LLC ("Debtor"), filed a

petition under chapter 11 of title 11 of the U.S. Code (the "Bankruptcy Code").[1] That petition

initiated this third bankruptcy case filed by Debtor in the past four years, and the fourth total

bankruptcy case in that same time frame involving the real property located at 3378 Hewlett

Avenue, Merrick, NY 11566 (the "Property"). The Property was Debtor's sole asset and has

been the subject of multiple disputes in both this Court and New York State courts concerning

the foreclosure of the Property and the eviction of Debtor from the Property.

Now pending before this Court is an Order to Show Cause (the "Order to Show Cause"),

in which the Court directed Debtor, its principal, and its counsel (the "Respondents") to show

cause why this chapter 11 case should not be converted to chapter 7 or dismissed with prejudice,

and why Respondents should not each be sanctioned for violating Federal Rule of Bankruptcy

Procedure ("Bankruptcy Rule") 9011. Upon consideration of all relevant facts and applicable

law, the Court orders that the case is dismissed with prejudice, and Respondents are sanctioned

as set forth herein.

---

[1] Hereinafter, any reference to "section[s]" or "§[§]" refers to the indicated section(s) of the
Bankruptcy Code, unless otherwise noted.

## JURISDICTION, VENUE, AND ADJUDICATORY AUTHORITY

This Court exercises the jurisdiction vested in the U.S. District Court pursuant to 28 U.S.C. § 1334(a) and the Standing Orders of Reference in effect in the Eastern District of New York dated August 28, 1986, and as amended on December 5, 2012, but made effective *nunc pro tunc* as of June 23, 2011. Venue lies pursuant to 28 U.S.C. § 1408. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A). The Court has the authority to hear and determine the issues raised under 28 U.S.C. § 157(b)(1).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Background and Procedural History

The factual background and procedural history are taken from the docket entries, pleadings, exhibits, letters, and other papers submitted by the Parties. The material facts are not in dispute.

### The first bankruptcy

On September 19, 2017, Debtor filed its first petition under chapter 7 of the Bankruptcy Code (the "2017 Chapter 7") (Case No. 17-75731). Debtor listed the Property as its sole asset in its schedules [2017 Chapter 7 Dkt. Item 1]. Scohn Enterprises was the holder of the first mortgage on the Property (the "First Mortgage Holder"). The first mortgage was fully due and payable more than two years before the 2017 Chapter 7 was filed. Debtor also had been obligated on a second mortgage in favor of Little Dae Enterprises dated July 7, 2016 (the "Second Mortgage Holder").

The First Mortgage Holder had obtained a prepetition Judgment of Foreclosure on July 31, 2017, in Nassau County Supreme Court. On August 25, 2017, Debtor was served with notice of foreclosure and sale of the Property. The foreclosure sale was scheduled for September 19,

2017, the same day the 2017 Chapter 7 petition was filed. Although the First Mortgage Holder proceeded to sale and the Property was sold to the Second Mortgage Holder, the sale could not be consummated due to this first bankruptcy filing.

On October 23, 2017, the First and Second Mortgage Holders (together, the "Mortgage Holders") filed a motion to dismiss the 2017 Chapter 7 case and for relief from the automatic stay to permit the foreclosure sale of the Property to conclude [2017 Chapter 7 Dkt. Item 19].

By a Stipulation and Order agreed to by Debtor and entered by this Court on December 13, 2017, the chapter 7 petition was dismissed with prejudice [2017 Chapter 7 Dkt. Item 30]. However, the parties did not agree to and the Court therefore did not impose a specific prejudicial dismissal time period.

*The second bankruptcy*

Debtor was served with another notice of foreclosure and sale of the Property on February 27, 2018. A second foreclosure sale was scheduled for March 20, 2018. To stop that sale, on March 19, 2018, Debtor filed a petition for chapter 11 relief under the Bankruptcy Code (the "2018 Chapter 11") (Case No. 18-71833). Debtor again listed the Property as its sole asset [2018 Chapter 11 Dkt. Item 1].

On May 9, 2018, the Mortgage Holders filed a motion for relief from the automatic stay in order to permit the foreclosure of the Property to go forward [2018 Chapter 11 Dkt. Item 10].

On May 16, 2018, the U.S. Trustee filed a motion to dismiss the 2018 Chapter 11, or in the alternative, to convert that chapter 11 case to chapter 7 [2018 Chapter 11 Dkt. Item 14].

On July 24, 2018, this Court issued an Order granting the Mortgage Holders relief from the stay in order to continue the foreclosure action [2018 Chapter 11 Dkt. Item 21]. That Order also prohibited Debtor from filing a subsequent petition under chapter 7 and/or 11 of the

Bankruptcy Code in any jurisdiction for a period of 180 days from June 22, 2018 [2018 Chapter 11 Dkt. Item 21].

On August 1, 2018, the Court issued an Order granting the U.S. Trustee's motion and dismissing the 2018 Chapter 11 [2018 Chapter 11 Dkt. Item 22].

*The third bankruptcy*

On August 2, 2018, Debtor received a third notice of foreclosure and sale of the Property, scheduled for August 21, 2018. Prior to the third scheduled foreclosure sale, Debtor filed Emergency Orders with the state court seeking to stay the foreclosure sale, which were denied.

On the same day of the scheduled foreclosure sale, the sale of the Property was conducted and Brian Corriette, a member and owner of Debtor, filed an individual chapter 13 petition (the "2018 Chapter 13") (Case No. 18-75667). Corriette, who had signed Debtor's petitions initiating both the 2017 Chapter 7 case and the 2018 Chapter 11 case, now claimed a direct interest in the Property in the 2018 Chapter 13, his personal bankruptcy case.

On August 30, 2018, Audrey Thomas began appearing as counsel for Corriette.

On August 31, 2018, Corriette filed an emergency motion with this Court, seeking an immediate stay of the sale, transfer or disposition of the Property [2018 Chapter 13 Dkt. Item 10].

On September 5, 2018, the Mortgage Holders filed a motion, seeking an order that no stay went into effect, or in the alternative for *nunc pro tunc* relief from the automatic stay [2018 Chapter 13 Dkt. Item 15].

During the 2018 Chapter 13, Corriette requested an opportunity to repay the mortgage debt owed to the Mortgage Holders. Although Corriette's claim of ownership of the Property was dubious, the Court imposed conditions under which Corriette and therefore Debtor, had the

chance to retain ownership of the Property. Corriette and Debtor fell woefully short of meeting those conditions.

On September 18, 2018, the Court issued a decision on the record, granting stay relief, and stated in part:

> Mr. Corriette was clearly attempting to gain [*sic* game] the system to use the bankruptcy process for the purposes for which it was not intended, which was to continue to attempt to delay a lender from seeking to exercise their state law remedies…In light of the two prior D&G filings and those having been dismissed with prejudice, given the delays sought by Mr. Corriette, both through himself, personally, and through D&G before the State Court seeking to stop the foreclosure sale, given that he sought relief from the State Court, which was denied on the day he filed this bankruptcy case and resulted in him filing this bankruptcy case, the Court finds both compelling and exceptional circumstances to annul the stay, effective as of the petition date and time, if the stay in fact ever went into effect.

[2018 Chapter 13 Dkt. Item 46 (transcript of hearing, pages 20-21)].

On October 15, 2018, the Chapter 13 Trustee moved to dismiss Corriette's 2018 Chapter 13, under § 1307(c)(1) for failure to properly prosecute his case [2018 Chapter 13 Dkt. Item 45].

On October 26, 2018, the Court issued its Order denying Corriette's motion and granting the Mortgage Holders stay relief [2018 Chapter 13 Dkt. Item 51]. The stay was annulled *nunc pro tunc* to the petition date and time to the extent the stay did go into effect upon the filing of the chapter 13 case.

On November 18, 2018, Corriette appealed this Court's October 26, 2018 Order to the U.S. District Court [2018 Chapter 13 Dkt. Item 52].

On January 11, 2019, while the appeal was pending, Corriette moved to dismiss his chapter 13 case [2018 Chapter 13 Dkt. Item 61].

On January 31, 2019, the Court issued an Order dismissing Corriette's 2018 Chapter 13 with prejudice and barring him from refiling under any chapter for a period of 180 days, in accordance with § 109(g)(2) [2018 Chapter 13 Dkt. Item 68].

On March 18, 2020, Corriette's appeal was rendered moot and dismissed by the U.S. District Court [2018 Chapter 13 Dkt. Item 72].

*This, the fourth bankruptcy*

On June 7, 2021, with the foreclosure sale of the Property having been completed, the state court issued a Decision and Order directing Debtor to remove all property located at the Property within ten (10) days.

On July 27, 2021, the state court denied Debtor's motion for emergency relief from the eviction order.

On July 30, 2021, Debtor received a notice to vacate the Property from the Sheriff of Nassau County.

On August 13, 2021, the Second Department of the Appellate Division denied Debtor's appeals of the June 7, 2021 Decision and Order.

On August 16, 2021, with foreclosure completed, eviction pending, and appeals having been denied by the state court, Debtor filed the instant chapter 11 case (the "2021 Chapter 11"), to stop the eviction. Audrey Thomas, as Debtor's Counsel, and Brian Corriette, as Debtor's member, signed the petition initiating the 2021 Chapter 11. That same day, the Mortgage Holders moved for an emergency hearing before this Court, seeking immediate relief from the automatic stay to allow for the eviction process to continue [2021 Chapter 11 Dkt. Item 5].

On August 19, 2021, the Court held an emergency hearing. As a result of that hearing, this Court lifted the stay for cause, to allow the parties to return to state court to conclude the

eviction proceedings [2021 Chapter 11 Dkt. Item 14]. In addition, at the hearing, the Court stated that it would issue an Order to Show Cause as to why the 2021 Chapter 11 should not be converted to chapter 7 or dismissed with prejudice, and why Debtor, Corriette, and Debtor's Counsel should not be sanctioned for filing this bankruptcy petition in bad faith.

On August 30, 2021, the Court issued the Order to Show Cause, which is now the subject of this decision (the "Order to Show Cause") [2021 Chapter 11 Dkt. Item 15]. Respondents were given 23 days to file responsive papers, and a hearing was scheduled for September 29, 2021.

On September 22, 2021, the U.S. Trustee filed a response to the Order to Show Cause, in favor of dismissal of Debtor's Chapter 11 case [2021 Chapter 11 Dkt. Item 35].

On September 22, 2021, the Mortgage Holders filed a response to the Order to Show Cause in favor of dismissal of Debtor's chapter 11 case and the imposition of sanctions [2021 Chapter 11 Dkt. Item 37].

On September 22, 2021, Corriette filed opposition to the Order to Show Cause [2021 Chapter 11 Dkt. Item 38].

On September 23, 2021, Debtor and Debtor's Counsel filed opposition to the Order to Show Cause [2021 Chapter 11 Dkt. Item 39].

On September 29, 2021, the Court held a hearing on the Order to Show Cause. The Court established a November 17, 2021 post-hearing submission deadline and received over 1,000 pages of further supplemental papers related to this dispute. Specifically, Debtor submitted over 300 pages consisting almost entirely of pleadings and orders from this Court and the trial and appellate courts of New York State [2021 Chapter 11 Dkt. Items 57, 59, 60]. Thereafter, the Court took the matter under submission.

*Discussion*

**A.  Debtor's present case should be dismissed with prejudice as a bad faith filing**

A chapter 11 case may be dismissed as long as "cause" is established under § 1112(b)(4). The Second Circuit has held that a bad faith filing constitutes cause for dismissal or conversion of a chapter 11 case. *See In re C-TC 9th Ave. Partnership*, 113 F.3d 1304, 1311 (2d Cir. 1997) (holding that the court may dismiss a chapter 11 filing on motion or *sua sponte* upon finding that the filing was in "bad faith," even without consideration of factors set forth in Section 1112(b)).

In addition, a petition may be deemed a frivolous filing if "there was no reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it would eventually emerge from bankruptcy proceedings at the time of filing." *In re Cohoes Indust. Terminal, Inc.*, 931 F.2d 222, 227 (2d Cir. 1991).  Further, "an entity may not file a petition for reorganization which is solely designed to attack a judgement collaterally- the debtor must have some intention of reorganizing." *Id.* at 228. A bankruptcy filing is made in bad faith if the petition was found to have been filed solely to avoid the consequences of adverse state court litigation. *See C-TC 9th Ave.,* 113 F.3d at 1310. More specifically, it is an impermissible use of chapter 11 when a debtor seeks to use a bankruptcy court to not reorganize, but rather to merely relitigate already-decided state court issues. *See In re Wally Findlay Galleries (New York), Inc.*, 36 B.R. 849, 851 (Bankr. S.D.N.Y. 1984).

The Second Circuit in *In re C-TC 9th Ave.* highlighted eight factors as indicative of a bad faith filing:

(1)  The debtor has only one asset;

(2)  The debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;

(3) The debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

(4) The debtor's financial condition is, in essence, a two-party dispute between the debtor and secured creditors which can be resolved in the pending state court foreclosure action;

(5) The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

(6) The debtor has little or no cash flow;

(7) The debtor cannot meet current expenses including the payment of personal property and real estate taxes; and

(8) The debtor has no employees.

*See C-TC 9th Ave.*, 113 F.3d at 1311 (citing *Pleasant Pointe Apartments, Ltd. v. Kentucky Hous. Corp.,* 139 B.R. 828, 832 (W.D. Ky. 1992)).

Debtor's 2021 Chapter 11 filing is littered with the "badges of bad faith" highlighted by the Second Circuit. More relevant here, it is undisputed that Debtor had no assets, as the Property had been foreclosed before this case had been filed. At the petition date, Debtor no longer had a legal interest in the Property. While Debtor argued at the show cause hearing that the state court incorrectly allowed foreclosure of the Property to proceed, the Debtor had no good faith basis to believe that this Court should resolve any such issue as opposed to the state courts, which have already overseen extensive litigation regarding foreclosure of the Property.

Further, Debtor listed no unsecured creditors in its Schedules. It is undisputed that this bankruptcy is nothing more than a two-party dispute between Debtor and the Mortgage Holders, which has been fully litigated before the trial and appellate courts of New York State. This is the

fourth petition relating to the Property, all of which have been filed on the eve of state court foreclosure and eviction proceedings.

Finally, it does not appear Debtor has any income or employees.

It is apparent to the Court that Debtor is simply using this Court to further delay and frustrate the Mortgage Holders attempts to enforce their rights to the Property as fully adjudicated by sister courts of competent jurisdiction. Because the 2021 Chapter 11 was a bad faith filing, cause exists for dismissal pursuant under § 1112(b).

The dismissal of a chapter 11 case may be made with prejudice to future filings; bankruptcy courts look to §§ 105(a) and 349(a) to impose such a bar. *See In re Casse*, 198 F.3d 327, 335 (2d Cir. 1999). Section 105(a) provides that a bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. *See* 11 U.S.C. § 105(a). Section 349(a) provides that dismissal of a case does not prejudice the debtor from filing a subsequent petition, "except as provided in section 109(g) of this title." 11 U.S.C. § 349(a). Section 109(g) provides an individual may not be a debtor in another case for 180 days if the case was dismissed by the court for willful failure of the debtor to abide by order of the court, or to appear before the court in proper prosecution of the case. *See* 11 U.S.C. § 109(a). Section 103(a) makes chapters 1, 3, and 5 applicable in chapter 11 cases. *See* 11 U.S.C. § 103(a).

The Second Circuit, and all other circuits except the Tenth Circuit, recognize the authority of the bankruptcy courts to sanction bad-faith serial filers by prohibiting future bankruptcy filings for longer periods of time than the 180 days specified by Section 109(g). *See Casse*, 198 F.3d at 337-38 (concluding that § 109(g) does not impose a temporal limitation upon §§ 105(a) and 349(a)). As long as the dismissing court finds cause, a bankruptcy case may be

dismissed with prejudice for more than 180 days, without violating the terms of §§ 109(g) or 349(a) of the Bankruptcy Code. *See id.* at 339 (citing *In re Jolly*, 143 B.R. 383, 385-87 (E.D. Va. 1992), aff'd, 45 F.3d 426 (4th Cir. 1994)). Cause exists to prohibit debtors from filing petitions for periods of time exceeding 180 days in cases of serial filers and their bad faith abuse of the bankruptcy process. *See id.* at 338-40 (highlighting cases prohibiting serial bad faith filers from further bankruptcy filings for one year or longer).

Here, Debtor's successive bankruptcy filings on the eve of scheduled foreclosure sales and/or eviction proceedings, as well as its use of the bankruptcy process merely as a platform to delay the lawful exercise of state law rights and attack final orders of other courts, warrants dismissal of this case with prejudice to Debtor's ability to refile for relief under any chapter of the Bankruptcy Code. Given Debtors' pattern of conduct, an appropriate period of such a bar is for three (3) years. This bar is particularly apt here as Debtor's 2017 Chapter 7 was dismissed with prejudice and Corriette's 2018 Chapter 13 was dismissed with prejudice and a 180-day refiling bar, neither of which dissuaded Debtor from filing this case post-foreclosure.

### B. Sanctions Should be Awarded to the Mortgage Holders

Pursuant to its authority under Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 9011(c)(1)(B), on August 30, 2021, the Court entered the Order to Show Cause, describing the conduct appearing to be sanctionable, and directing Debtor, Corriette and Audrey A. Thomas, as Respondents, to show cause why they had not violated Bankruptcy Rule 9011(b). These parties were given 23 days to respond and did so. As noted above, Corriette filed opposition to the Order to Show Cause on September 22, and Debtor and Debtor's Counsel filed opposition on September 23 [2021 Chapter 11 Dkt. Items 38, 39]. Debtor additionally submitted

over 300 pages of further supplemental papers relating to this dispute [2021 Chapter 11 Dkt. Items 57, 59, 60].

Bankruptcy Rule 9011 is adopted from Rule 11 of the Federal Rules of Civil Procedure. If sanctions are sought by an opposing party, the opposing party must generally comply with the "safe harbor" provision of Bankruptcy Rule 9011 by providing the allegedly offending attorney with a copy of the motion at least twenty-one (21) days before filing the motion for sanctions under Bankruptcy Rule 9011. *See* Fed. R. Bankr. Pro. 9011(c). This "safe harbor" provision allows the allegedly offending party the opportunity to withdraw or correct the challenged submission.

However, the 21-day safe harbor does not apply if the sanctionable conduct is the filing of a bankruptcy petition in violation of Rule 9011(b). *See In re Parikh*, 508 B.R. 572, 584 (Bankr. E.D.N.Y. 2014); Fed. R. Bankr. Pro. 9011(c)(1). Similarly, no "safe harbor" opportunity exists to withdraw or correct a submission when a court *sua sponte* initiates its own sanctions proceeding by issuing a show cause order. *See In re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2d Cir. 2003); Fed. R. Bankr. Pro. 9011(c)(2). Respondents are entitled to due and adequate notice of the allegedly offending conduct and an opportunity to be heard. This Court took care to delineate the conduct at issue and provided Respondents with 23 days to respond, which was ample and satisfied due process concerns.

Pursuant to Bankruptcy Rule 9011(b)(1), sanctionable bad faith filing of a bankruptcy petition occurs when a petition is filed for an "improper purpose." Awarding sanctions pursuant to the "improper purpose" prong of Bankruptcy Rule 9011(b)(1) requires a finding of "subjective bad faith." *Parikh*, 508 B.R. at 584. Additionally, where a *sua sponte* sanction denies a lawyer the opportunity to withdraw the challenged submission pursuant to the "safe harbor" provision,

12

the appropriate standard of review is "subjective bad faith." *Pennie & Edmonds LLP*, 323 F.3d at 87. Here, while the subjective bad faith element should not apply since the petition is not a pleading that can be withdrawn, the Court has nonetheless applied that standard and finds bad faith is evident here.

The instant case -the fourth case- was filed only to harass the Mortgage Holders and cause further unnecessary litigation and costs. *See Parikh*, 508 B.R. at 585. Given the abundant record made before this Court over 4 years, and the clear pattern of extensive litigation before the New York State courts, no other motive is possible or can reasonably be inferred.

Once a Bankruptcy Rule 9011(b) violation is found, the Court may impose appropriate sanctions upon the attorneys, law firms, or parties that have violated the Rule. *See* Fed. R. Bankr. Pro. 9011(c). Here, the conduct of Debtor, Corriette, who signed the petition on Debtor's behalf, and Debtor's Counsel, Audrey A. Thomas, who also signed the petition, is sanctionable pursuant to Bankruptcy Rule 9011(b)(1). Each of the four related bankruptcies had been filed on the eve of the state foreclosure or eviction proceedings. The "improper purpose" of the 2021 Chapter 11 filing was to delay or frustrate the state court litigation and the Mortgage Holders from exercising their state law remedies, all while having no intention or reasonable possibility of reorganization. There are no assets available to reorganize and there was no justifiable basis for invoking this Court's jurisdiction.

Generally, courts have held the primary purpose in imposing sanctions is that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct of the offending person or comparable conduct of similarly situated persons. *See Parikh*, 508 B.R. at 584 (citing Fed. R. Bankr. P. 9011(c)(2)). Simply put, the Court must exercise its discretion to determine the minimum sanctions necessary to deter future sanctionable conduct.

13

*See In re Omega Trust*, 120 B.R. 265, 270 (S.D.N.Y. 1990) (citing *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 399 (1990)). Types of sanctions include: (1) reprimand of the offender; (2) a fine; (3) an award of reasonable expenses, including attorney's fees incurred as a result of the misconduct; (4) reference of the matter to the appropriate attorney disciplinary or grievance authority; (5) entry of a default judgment; or (6) censure, suspension, or disbarment from practicing before the forum court, subject to applicable rules or statutes. *See In re Omega Trust*, 110 B.R. 665, 673 (Bankr. S.D.N.Y. 1990).

It is clear that dismissal of this case with prejudice is not an adequate remedy, as that has simply not worked thus far. The award of reasonable attorney's fees to the Mortgage Holders incurred in seeking stay relief and/or dismissal of this case is warranted here and is not more severe than reasonably necessary to deter repetition of the conduct of the Respondents or comparable conduct by similarly situated persons. In addition, it is evident that Debtor's counsel should undertake no less than ten (10) hours of continuing legal education on bankruptcy law courses of her own choosing which emphasize chapter 11 practice and procedure.

This Court has reviewed the attorney's fees and expenses requested by the Mortgage Holders, consisting of 19 hours of attorney time at a rate of $425.00 per hour ($8,075.00), and 13.3 hours of paralegal time at $125.00 per hour ($1,662.50), for total fees of $9,737.50, plus $207.10 of out-of-pocket expenses, for total fees and expenses of $9,944.60 [2021 Chapter 11 Dkt. Item 62]. No opposition to this request was filed. The services rendered were necessary to protect the legal rights of the Mortgage Holders which were put at risk as a result of this bad faith filing; the rates charged both by attorneys ($425/hour) and paralegals ($125/hour) are consistent with and, in fact, on the lower end of the range charged in this district by attorneys of comparable skill and ability; and the time spent by counsel (a total of 32.3 hours) was required to

effectively prosecute its clients rights in response to this bad faith filing. *See Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 2019 WL 2870721, at *4 (E.D.N.Y. 2019) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 184 (2d Cir. 2007)). The Court finds this request to be reasonable under all applicable criteria.

## CONCLUSION

Based upon the foregoing, it is hereby

**ORDERED**, that the 2021 Chapter 11 case is dismissed pursuant to § 1112(b); and it is further

**ORDERED**, that the instant case is dismissed with prejudice to refiling under any chapter for a period of three (3) years pursuant to § § 105, 109(g)(2); and it is further

**ORDERED**, that Debtor, Brian Corriette, and Audrey A. Thomas, Esq. are hereby jointly and severally sanctioned pursuant to Federal Rule of Bankruptcy Procedure 9011(b) in the amount of $9,944.60; this sanction award is to be paid within thirty (30) days of entry of this Order, with evidence of payments to be filed with this Court by Respondents within ten (10) days thereafter; and it is further

**ORDERED**, that Audrey A. Thomas, Esq. shall attend no less than ten (10) hours of continuing legal education on bankruptcy law courses of her own choosing which emphasize chapter 11 practice and procedure; such CLE shall be completed within ninety (90) days of entry of this Order, and Ms. Thomas shall file a letter certifying her compliance with such CLE requirements within ten (10) days thereafter.



Dated: December 10, 2021
     Central Islip, New York

_____
**Alan S. Trust**
**Chief United States Bankruptcy Judge**